IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO. 16-444 |
| JEFFREY CURTIS DREXLER | |

### MEMORANDUM OPINION

**Schmehl, J.** */s/JLS*                                                                                     July 30, 2021

Before the Court is a *pro se* motion filed by Defendant Drexler that seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The government has filed a response, and Defendant's motion is now ready for decision.

I.  **STATEMENT OF FACTS**

Drexler was sentenced by this Court to a term of 120 months' incarceration – the mandatory minimum required by law – for his conviction for possessing images and video involving the sexual abuse and exploitation of children. By his own admission, Drexler committed these crimes multiple times each week for at least the eight to nine years leading up to his arrest. At the time he committed these federal offenses, Drexler was already a convicted child sex offender, having been convicted of the exact same crimes in state court. He was also a Megan's Law Child Sex Offender registrant at the time he committed these new federal crimes.

On May 8, 2017, he was sentenced by this Court to the mandatory minimum term of 10 years' incarceration, followed by 25 years' supervised release. Drexler is serving his sentence at Fort Dix FCI, with an anticipated release date of April 28, 2025. He has

served approximately 53 months and has credit for good conduct time of approximately 7 months, for total time served of approximately 60 months. He has not committed any disciplinary infraction during his time in custody.

On January 2, 2021, Drexler filed a *pro se* letter with the Court, requesting compassionate release based on his self-reported history of upper respiratory conditions, which Drexler identified as asthma and bronchitis. The government responded to Drexler's compassionate release motion and provided his medical records from the Bureau of Prisons. The records show that Drexler, who is 32 years old, presents with almost no medical issues at all. ECF No. 39. Over the years of his incarceration since 2016, Drexler has been seen by the medical staff for general physicals, optometry appointments, and headaches. See Exhibit B at 14. He was treated for gastroesophageal reflux disease (GERD) in 2016 and 2017 but is currently not taking any medications for that or any other condition. See Exhibit B at 4. Indeed, though he claims to have suffered for years from asthma and bronchitis, his medical records from the BOP include no complaint or treatment connected to either of those two conditions. The only reference to asthma in the BOP records was in 2016 when the defendant self-reported a history of asthma. See ECF 35 at 2. Drexler provided the Court with some medical records from 1997 to 1999 that show bronchitis and some coughing issues, but no records reflect any type of respiratory condition after 1999.

The records also show that Drexler contracted COVID-19 on December 29, 2020, and suffered from hardly any symptoms. See Exh. B. at 1, 32. Further, on March 22, 2021, Drexler refused the Pfizer vaccine that was offered to him. *Id*. at 16.

**II.     LEGAL AUTHORITY**

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The relevant Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." In application note 1 to the policy statement, the Commission identifies "extraordinary and compelling reasons" that may justify compassionate release as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding

absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant

    (i)    is at least 65 years old;

    (ii)    is experiencing a serious deterioration in physical or mental health because of the aging process; and

    (iii)    has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the

>   > only available caregiver for the spouse or registered partner.
>
>   (D) Other Reasons.— As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Generally, the defendant has the burden to show circumstances that meet the test for compassionate release. *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019); *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019). The Third Circuit held: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). *See also United States v. Roeder*, 807 F. App'x 157, 160-61 (3d Cir. 2020) (per curiam) (not precedential) ("the existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence."), *id.* at 161 n.16 ("Similarly, the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.").

If a defendant's medical condition is found to be the type of condition that puts a defendant at the increased risk of an adverse outcome from COVID-19, a court must next analyze the factors under section 3553(a) and the Sentencing Commission's policy statement. Section 3582(c)(1)(A) requires a court to consider the "factors set forth in section 3553(a) to the extent they are applicable" before a sentence may be reduced.

These factors require a determination of whether the sentence served "reflect[s] the nature and circumstances of the offense and the history and characteristics of the defendant;" "reflect[s] the seriousness of the offense;" "promote[s] respect of the law;" and "afford[s] adequate deterrence to criminal conduct." The statute also instructs a court to consider the Sentencing Commission's policy statement, which allows a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.

### III. DISCUSSION

As stated above, Drexler asserts that he suffers from asthma and bronchitis. The CDC's risk factors list was recently updated and includes moderate to severe asthma as a condition that is a CDC risk factor in relation to COVID-19. Here, Drexler has presented absolutely no evidence showing that he suffers from asthma at all, let alone the moderate to severe asthma that would place him at greater risk of an adverse outcome from COVID-19. As Drexler has no health conditions whatsoever, his motion will be denied.

Further, as documented in his medical records, Drexler refused the Pfizer vaccine on March 22, 2021. Thus, it seems Drexler has voluntarily declined to mitigate his risk of further COVID-19 infection. There is no apparent medical reason why Drexler should not receive the vaccine, as the records state that he merely "refused." Accordingly, I find that his refusal to accept a vaccine negates any "extraordinary and compelling reason" for relief that otherwise may have existed. This is in line with other courts in this circuit, who have similarly found that individuals who have declined vaccination to protect them against COVID-19 are not entitled to compassionate release. *United States v. Adams,* 2021WL 2822939 (E.D. Pa., July 7, 2021); *United States v. Ortiz*, 2021 WL 1422816

(E.D. Pa. Apr. 15, 2021); *United States v. Bautista*, 2021 WL 1264596 (E.D. Pa. Apr.6, 2021); *United States v. Jackson*, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021); *United States v. Robinson*, 2021 WL 719658 (W.D. Pa. Feb. 23, 2021).

In addition, it is worth noting that Drexler contracted COVID-19 and appears to have recovered from it without any serious consequences. In this circumstance, the large majority of courts to address the matter have concluded that the risk is mitigated, and compassionate release is not justified. *See, e.g., United States v. Wiltshire*, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) (Pratter, J.) ("the risk of reinfection after a prior positive test for COVID-19 is a not basis for compassionate release here."); *see also United States v. Carter*, 2021 WL 427110, at *1 (E.D. Pa. Feb. 8, 2021) (McHugh, J.); *United States v. Dan*, 2020 WL 3453845, at *5 (D. Haw. June 24, 2020); *United States v. Mogan*, 2020 WL 2558216, at *4 n.29 (E.D. La. May 20, 2020); *United States v. Russo*, 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020) (denying otherwise meritorious motion for compassionate release because defendant tested positive for COVID-19 during the pendency of the motion); *United States v. McCollough*, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020).

Further, the Federal Bureau of Prisons, as of the date of this opinion, reports that there are 2,879 inmates housed at Fort Dix FCI. FEDERAL BUREAU OF PRISONS, *Fort Dix FCI*, https://www.bop.gov/locations/list.jsp (last visited on July 27, 2021). As of the date of this opinion, only 1 staff member and no inmates are infected with COVID-19 at Fort Dix FCI. FEDERAL BUREAU OF PRISONS, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited on July 27, 2021). Further, there are 254 staff members and 1737 inmates at Fort Dix FCI who have received

7

COVID-19 vaccinations. FEDERAL BUREAU OF PRISONS, *Fort Dix FCI*, https://www.bop.gov/coronavirus/ (last visited on July 27, 2021). These numbers show that COVID-19 is well under control at Fort Dix, where Drexler is incarcerated.

Lastly, even assuming Drexler could present an extraordinary and compelling reason for relief, which he cannot, in examining the 3553(a) factors and his possible danger to the community, release still must be denied. In examining these factors, I must evaluate whether the sentence served reflects the nature and circumstances of the offense and the history and characteristics of the defendant, reflects the seriousness of the offense, promotes respect of the law, and affords adequate deterrence to criminal conduct.

First, including good time credit, Drexler has only served approximately 60 months of his 120-month sentence, or fifty percent. Moreover, he continues to present a danger to the community, and should serve his entire sentence. Drexler committed horrific child exploitation crimes and sexually abused two family members. There is no doubt that, at the time of his arrest, the defendant was engaged in conduct that was a significant danger to the community. If he were to be released, that danger would continue. Considering Drexler's serious criminal conduct, he should serve the balance of his 120-month prison sentence to deter him from this type of conduct again in the future.

Accordingly, considering Drexler's lack of any medical condition, his refusal of the vaccine, his recovery from COVID and the low case numbers at Fort Dix, he does not warrant a sentence reduction or release in any fashion at the present time.

### IV.     CONCLUSION

For the foregoing reasons, Drexler's motion for compassionate release is denied.